May it please the Court, my name is Seth Rezka and I represent the petitioner Felix Guevara Valencia. Your Honor, this case involves specifically two issues. Whether or not the BIA had the authority to issue a removal order in the first instance where the immigration judge did not issue a removal order. And secondly, whether there is substantial evidence in support of the BIA's finding to deny my, Mr. Valencia, withholding of removal. In addressing the first argument, there is a precedent LaLong versus INS. In that case, the Court is looking at whether or not the order of the immigration, whether or not there is an order and a finding of removability. In fact, I think there is precedent also when there is a grant of an application that that actually can constitute a removal order if there is some finding of removability or some concession of removability. In this case, the immigration judge averred in the procedural history that the Respondent conceded removability and was not at issue. That was inaccurate. The Respondent did concede removability under 237a1a, or excuse me, a1b, but did not concede it under 237a1a. Therefore, removability was still at issue. And it's the position then of the Petitioner that the BIA had no authority. They didn't follow their own rules and regulations in issuing the removal order. My second argument is that the BIA erroneously granted the order. Sotomayor, I have a question about that. The immigration judge granted withholding in this case, which was reversed, if I'm remembering that correctly. Correct. So in order to grant withholding, didn't the IJ at least implicitly have to have made the determination that your client is removable, otherwise there would be nothing to withhold. You know, Your Honor, I agree with you in one respect, that in theory you're correct. But I think that the immigration judge also has a duty to comply with what is required. Maybe it's implicit because there was a grant of withholding or removal, but still the immigration judge was not at issue. Didn't he say it was not at issue, all the elements? The immigration judge said removability was not at issue. That was the specific language that she used. But as I indicated before, if someone is charged with being removable and everyone agrees that there's no question as to that, what's left? Removability was still at issue. There were two removal charges. It's not – there is an open question of whether or not the Petitioner was removable under 237A1A. But what that seems to suggest is that the immigration judge made a mistake by saying that it wasn't at issue, but that's different than not considering it. In other words, the immigration judge said removability, in essence, is conceded and I'll move on to withholding, which by definition can only happen if the person is removable. And that may have been incorrect, but that's what the immigration judge held. And so I guess I'm having difficulty seeing why we can't just go on from there. Because I do think that the immigration judge and the courts have a responsibility in complying with their own rules and regulations. If the rules and regulations require an order and a finding of removability, yes, I understand that this circuit has been giving leniency to how that's done, where there's a concession of removability. But if there's still an open question of what is still removable, I think that the court may go too far in allowing, you know, these types of errors and not issuing a proper removal order. And that's why that's my position, that how far are we going to go when there is an error in the order on removability, and that's what the statute requires. As to the second issue, I am, I have an, my client, my client's case is very similar and yet very distinguishable to Lynn v. INS. My client was initially granted, as indicated by Your Honor, that the immigration judge granted my client's withholding of removal, and that was reversed by the BIA. In Lynn, both Lynn and Valencia, who is my client, were police officers in the Philippines. They both were involved in special units trying to infiltrate the communist insurgents. In Lynn and with Mr. Valencia, they had relatively national or received public notoriety for their investigations. In Lynn and with Valencia, there was threats made by the communists. The threats in Lynn resulted in the killing of a couple of team members. In Lynn, he was followed by unidentified individuals, just like with Valencia. Valencia was followed by unidentified individuals in his neighborhood. Valencia received, was told that the communists were attempting to liquidate him. With Lynn, these threats had gone on for approximately six years. With Valencia, the threats occurred during a six-month period of time. Valencia and Lynn both quit their roles as police officers and still received these threats. What this court said was the threats themselves, if they go unfulfilled, doesn't constitute that type of persecution because they went unfulfilled. It was reasonable to conclude after a six-year period of time that there aren't going to be, that there doesn't seem to be anything else to harm or have Lynn suffer from. With Valencia, the circumstances revolved around a six-month period of time where he's receiving the threats, moving from, he owned four homes, from one house to another. His family also moved from one house to another. So you don't view the unfulfilled threats language then as setting forth any categorical rules. Is that your point? Well, I think a determination, in my view, I think a determination has to be made as to whether they went unfulfilled. I think it's reasonable to conclude during a six-year period of time that those threats were going to go unfulfilled. In Valencia, during a six-month period of time when there was a murder of a fellow officer, he's being threatened, he's being followed. Is there a reasonable conclusion that the threats were going to go unfulfilled? I think that there can't be just a clear issue that, all right, if the threats occurred in one month or six months, then I agree. I don't think that there should be an absolute rule. During a six-year period of time, I do see a distinguishing element. Mr. Reskill, let me take you one step further and ask you why was the agency wrong in relying on the fact that the government of the Philippines can really take care of this problem? I mean, they can protect this man. I would say that they were not able to do that. I think the immigration judge, one, found that because the communists at that time were still a viable danger to Mr. Valencia that if he did return and if he was imprisoned, I am missing one point and I'll get to that in a moment. If he was in prison, because the communists are also in prison, he would be facing a threat to his life. Also, the issue also that came up is that Mr. Valencia was falsely charged with murdering the mayor. The mayor's wife, the deceased mayor's wife, was linked to the communist insurgents and she, according to my client, was under the impression that my client would be a viable candidate for mayor in an attempt to limit his ability to run for mayor, did falsely charge my client. So there is an issue of if he did return, whether he was going to be arrested and then subjected to the communists already detained. And I use the point of the false charges because this court has indicated that for Lim, you established a well-founded fear of persecution, but you didn't get to the higher point of a clear probability, more likely than not. And the factors that the courts considered was that Lim's family remained unmolested and Valencia's family came to the United States. Also, the confrontation or mistreatment, the false charge that my client killed the mayor, I think is the additional step where there is that close confrontation or mistreatment. I believe that I'm out of time at this moment. Thank you very much. Thank you. Good morning, your honors. May I please the court? My name is Stephanie Savorn. I'm an attorney with the U.S. Department of Justice and I represent the government in this matter. The issue before this court is whether the record compels reversal of the board's denial of Mr. Valencia's application for withholding of removal and protection under the Convention Against Torture. Because Mr. Valencia's claims do not rise to the level of past persecution and he has not demonstrated that it's more likely than not he would be either persecuted or tortured in the future, the court should deny the petition for review. As an initial matter, Mr. Valencia has not demonstrated past persecution. Mr. Valencia was involved in several operations against the NPA. He was a police officer who started working in 1989. Then in 1999, he began being involved in four operations against the NPA. These were normal government operations to combat what the U.S. has deemed a terrorist organization. Afterwards, Mr. Valencia said that he heard from various neighbors that suspicious people in his neighborhood were NPA members after him. They also told him that he was a target for liquidation. But he has not demonstrated that the agents or concerned citizens got this information from someone in particular. These threats were not made to him in particular. This court has held that threats of serious harm may constitute persecution, especially combined with mistreatment or confrontation or when they're so menacing that they cause significant actual suffering or harm. However, these threats have not been combined with mistreatment or confrontation nor have they caused significant actual suffering or harm. These were passed through him from other people. Therefore, I agree with Petitioner's Counsel that Lim in this case is controlling but for a different reason. I believe that the incidents that Mr. Valencia have experienced in this case do not rise to the level that Mr. Lim had experienced in his own case. Mr. Valencia... There were threats. There were threats. No confrontation. Because there's no confrontation. In that case, Mr. Lim, he was followed. He saw it in person. He received the threatening phone calls and letters which were tied with a black ribbon. Three colleagues of his were murdered. In that case, he had also provided corroborating evidence from two persons saying that he was on a threat list. Also, his identity had been revealed to the NPA and the CPP because he testified in open court against them during trial. However, at no point in the time during the operations that Mr. Valencia was involved in did his identity ever become revealed to the NPA. Therefore, it's the government's contention that the past experiences do not constitute past persecution. In that case, Mr. Valencia is not entitled to presumption of future persecution under Molina-Estrada v. INS. Therefore, he had to independently establish a clear probability of future persecution. However, he has failed to provide objective evidence that the NPA members would harm or mistreat him should he return to the Philippines. Mr. Valencia contends that should he be returned to the Philippines he would be jailed because there's a warrant for his arrest out. However, he alleges that his fear arises from the fact that persons, namely criminals and NPA members he had jailed would then retaliate against him. That is a personal vendetta. Also, it's not clear that those persons would still be in jail upon his return there. Also, it's speculative whether or not the Filipino government would actually then carry out the prosecution against Mr. Valencia. Another point is that Mr. Valencia has not demonstrated that the government of the Philippines would be either unable or unwilling to protect him. During the time that he was receiving the threats his supervisor had actually advised him to go to a military camp where he stayed in safe haven during this time. The police treated Mr. Valencia exceptionally well when they're investigating the murder of Mr. Paulino as well. Finally, when looking at whether or not there's a clear probability of future persecution, this court has looked in the past to people who were in similarly situated positions or situations. In this case, Colonel Chineo, Mr. Valencia's supervisor, who has ordered the violent operations against the NPA continues to reside in the Philippines unharmed as has Mr. Valencia's brother. The only other evidence in the record is that the NPA has carried out killings against police members. However, this is a generalized statement of country conditions. There's nothing specific relating to Mr. Valencia. With regards to petitioner's contention that remand is appropriate in case because the immigration judge found Valencia removal, the government disagrees. The government believes that Lolong vs. Gonzalez is controlling and that it's very clear that the IJ's grant of relief, whether in the form of asylum or withholding of removal on other grounds, necessarily requires the IJ to have already determined that the alien is deportable. Under the INA, such a determination constitutes an order of deportation or removal. Do we have authority on the point? I'm sorry, Your Honor? Do we have any authority on the point? Lolong vs. Gonzalez would seem to be the closest authority, Your Honor. Would you like to cite for that? No, I haven't. That is the closest authority. Yes, Your Honor. Thank you. Therefore, the government believes that removability has been established and is not an issue in this case and therefore it should not be remanded. If you don't have any further questions, could I clear to be in? Okay. Because Mr. Valencia has failed to establish eligibility for withholding of removal and cap protection, the Court should deny the petition for review. Because the record does not mandate the conclusion, it is more likely than not that Mr. Valencia would suffer future persecution or be tortured. Thank you. Thank you, counsel. Are there any further questions of the appellate counsel? Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple, Graber